John E. Auker and Gladys Marie Auker, His Wife, Plaintiffs-Appellants, v. E. Fred Gerold, et al., Defendants-Appellees.

Gen. No. 65–79.

Fifth District.

February 18, 1966.

Kassly, Weihl, Carr & Bone, of East St. Louis (Donald E. Weihl, of counsel), for appellants.

Goldenhersh & Goldenhersh, of East St. Louis (Marvin W. Goldenhersh and Michael A. Katz, of counsel), for appellees.

TRAPP, P. J.

This is an appeal from a judgment of the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, in favor of the defendants following a trial without a jury. After the premises were destroyed by fire, the plaintiffs brought suit for a return of a "deposit" made in connection with a lease of certain improved real estate.

Plaintiffs, as lessees, and defendants, as lessors, entered a written lease of ground floor space in a small building for a period of seven years, commencing December 15, 1958, or when certain major improvements to be made by the lessors were completed, at a rental of $150 per month, payable in advance. The lease included the following provisions:

> "As a part of this contract, the Lessors are to make certain improvements and furnish electrical lighting fixtures as agreed upon by the Lessees at Lessor's expense; However the Lessees are to deposit with the Lessors One Thousand and no/100 Dollars ($1,000.00) cash when this lease is signed, and are to pay an additional One Hundred and no/100 Dollars ($100.00) per month each month until an amount equal to amount of these improvements have been deposited.
>
> "The amount of deposit of One Thousand and no/100 Dollars and the payment of One Hundred and no/100 Dollars per month are to be credited to the Lessees on the last two (2) years of this lease. The total amount of these improvements to be made are not to exceed Three Thousand Six Hundred and no/100 Dollars ($3,600.00). . . .
>
> "3. If the Lessees shall fail to pay the rent aforesaid when due, whether said rent be demanded or

426

not . . . . and terminate and annul this lease so far as regards all future rights of said Lessees, and the Lessors shall have all legal rights and remedies permitted by and available under the laws of the State of ILLINOIS for the collection of any rent due or payable hereunder, and for the possession and sale of any property of the Lessees liable as security for the payment of such rent, whether by lien, attachment, distraint and/or confession or judgment or otherwise; . . . . ."

"6. In case said premises shall be destroyed or damaged by fire or other unavoidable casualty, sixty (60) percent or more; this lease may be cancelled by either party."

The deposit was made and the rent was paid in accordance with the written lease. On December 26, 1961, the premises were 60% destroyed by fire. The lessors determined not to rebuild and the lessees established a restaurant at another location. The testimony of a defendant is that the lease was treated as cancelled by both parties. In May of 1962, plaintiffs demanded a return of the deposit and the demand was refused.

Plaintiffs contend that the situation falls clearly within the line of authorities which hold that a deposit to secure future rent can be recovered when the lease is terminated while the lessee is not in default, unless a contrary intent is affirmatively indicated by the terms of the lease. Defendants contend that the situation falls clearly in that line of authorities which hold that payments of advance rent may not be recovered where the premises are destroyed by fire. Since a holding in favor of the plaintiffs' view of this payment as a deposit would be decisive of the issue in plaintiffs' favor, we will examine this issue first. We do not believe that adopting defendants' view of this issue would be decisive of defendants' right to prevail for reasons given hereafter.

The authorities on the subject are somewhat confusing for the reason that the courts of various states have actually adopted divergent views as to the justice of the situation and these different views as to the merits have led to varying emphasis upon the factors which are said to determine whether the payment was a deposit to secure performance, or an advance payment of rent, it being fairly generally conceded that a deposit is refundable and an advance payment of rent is not.

There is an elaborate annotation on the subject of a "Provision in lease for pecuniary forfeiture where lease is prematurely terminated as one for liquidated damages" in 106 ALR 292–318. Practically all of the cases cited by plaintiff, and many of the cases cited by defendant are discussed in this annotation. There is an annotation on the subject: "Right of a lessor to retain advance rental payments made under lease terms upon lessee's default in rent" in 27 ALR2d 656–674. This annotation discusses practically all authorities cited by plaintiffs and many cited by defendant. This latter annotation is followed in ALR Later Case Service, Vol 3, page 981–983. It is obvious that the matter of advance payments upon a lease has been a fertile field of litigation and that seemingly different rules are sometimes applied to almost identical fact situations.

The analysis of the cases cannot be separated from the subject of provisions in leases for forfeitures or liquidated damages. The reason for this is that most of the cases which discuss the question of the right to the return of a deposit are cases in which the issue is whether the money was paid to secure performance or was the contracting parties' determination of liquidated damages.

The following rules appear to collide with one another and, at times, with our sense of justice:

1. If the payment is a payment in the nature of a deposit to secure performance, then upon termination by the lessor for the lessee's default in performance and

repossession by the lessor, the lessor may retain only so much of the deposit as represents rent to the date of repossession;

2. If the payment is described as liquidated damages in the event of default by the lessee, then notwithstanding such description, a penetrating examination will be made to determine whether it really is liquidated damages or a penalty;

3. Even though the payment be described as liquidated damages, if the damages can be readily computed or if the sum stipulated obviously exceeds the damages the payment will be described as a penalty and only actual damages will be allowed;

4. If the payment is an advance payment of rent, then, though it be a payment for two years, and though the lessee be in good standing, there is no right to a refund on destruction of the premises so as to render the premises untenantable;

5. If the payment were for true liquidated damages in the event of default, then upon destruction of the premises by fire, the nondefaulting tenant would be entitled to a refund and the defaulting tenant would not;

6. If the payment were called liquidated damages, but could not meet the test of being fair, in the sense of approximating real damages, then, in case of destruction by fire, both the defaulting and nondefaulting tenants could obtain a refund;

7. If the payment were determined to be a deposit to secure rent, then a lessee in good or bad standing could recover in the event of destruction of the premises by fire;

8. The intention of the parties should govern;

9. If the advance payment is, in fact, one of the considerations for entering the lease and is so stated as an advance payment of rent, it is not recoverable;

10. Rent is a payment for the use of the premises and if the use is not obtained, then no rent is due;

11. Equity abhors a forfeiture;

429

12. Parties may contract for liquidated damages but may not contract for a penalty.

In Advance Amusement Co. v. Franke, 268 Ill 579, 109 NE 471, the lessors had obtained judgment for possession following default in payment of rent. The lessee sought recovery of $2,500 paid as security for performance of the lease:

> ". . . which said sum of twenty-five hundred dollars ($2,500.00) shall be applied by said party of the first part as rental reserved for the said premises for each of the last seven and one-seventh months of the term herein demised."

The lease further provided that the lessor should pay interest upon the sum but that, upon default, the lessor might retain the sum or any portion held as liquidated damages. In affirming judgment for the lessee, the court said, at p 581:

> "As was said by this court in Gobble v. Linder, 76 Ill 157, no branch of the law is involved in more obscurity by contradictory decisions than whether a sum named in an agreement to secure performance will be treated as liquidated damages or a penalty, and as each case must depend upon its own peculiar and attendant circumstances, general rules of law on this question are often of little practical utility. While the intention of the parties on this question must be taken into consideration, the language of the contract is not conclusive. The courts of this State, as well as in other jurisdictions, lean towards a construction which excludes the idea of liquidated damages and permits the parties to recover only damages actually sustained. (Scofield v. Tompkins, 95 Ill 190; Radloff v. Haase, 196 id. 365; Bilz v. Powell, 38 LRA (NS) 847, note). This court has said that the rules deducible from the cases may be stated as follows: 'First, where by the terms of a contract

a greater sum of money is to be paid upon default in the payment of a lesser sum at a given time, the provision for the payment of the greater sum will be held a penalty; second, where by the terms of a contract the damages are not difficult of ascertainment according to the terms of the contract and the stipulated damages are unconscionable, the stipulated damages will be regarded as a penalty; third, within these two rules parties may agree upon any sum as compensation for a breach of contract.' (Poppers v. Meagher, 148 Ill 192.) This and all other courts seem to agree upon the principle that a stipulated sum will not be allowed as liquidated damages unless it may be fairly allowed as compensation for the breach. (1 Sedgwick on Damages, –9th ed–sec 407, and cases cited.) We have frequently said that courts will look to see the nature and purpose of fixing the amount of damages to be paid, and if it appears to have been inserted to secure the prompt performance of the agreement it will be treated as a penalty and no more than actual damages proved can be recovered. (Westfall v. Albert, 212 Ill 68, and cases cited). In general, a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty. Tayloe v. Sandiford, 7 Wheat 13; 1 Sedgwick on Damages, (9th ed) sec 402."

Again, in the same case, the court said, p 583:

"The argument of counsel for plaintiff in error would require the holding that the $2500 should be retained as liquidated damages whether the lease was violated less than a year before it expired the same as if it were violated within a few months after it was entered into. Such a construction of the contract violates the great fundamental principle which underlies our whole system,—'that of compensation;

431

the great object of this system is to place the plaintiff in as good a position as he would have had if his contract had not been broken.' "

The significant thing about the attitude of the Supreme Court of Illinois, as evidenced by the foregoing quotation, is that unless prevented by some specific understanding of the parties, payments which are, in fact, to secure performance in rental contracts, or any other kind of a contract, will be adjusted upon the basis of actual damages resulting from the non-performance.

 While conceding that parties may contract for the accrual of rent after an eviction, our Supreme Court has made it clear that in the absence of an express contract to that effect, rent will not accrue. In Grommes v. St. Paul Trust Co., 147 Ill 634 on p 642, 35 NE 820, the court said:

> "The rule, that eviction suspends the payment of rent, results from the meaning of the term, rent, and from the obligations of the relation between landlord and tenant. Rent is compensation for the use of land, and what the tenant pays rent for is quiet possession, or beneficial enjoyment. When, therefore, the use or possession ceases, the consideration for the payment ceased. (Cases cited.)"

In Virginia Amusement Co. v. Mid-City Trust & Savings Bank, 220 Ill App 147, payment of $17,000 was required under a lease which provided:

> ". . . said sums to apply as rent for the first year of said term and the last year of said term,"

and further provided that in the event of a breach, all sums paid by the lessee should be forfeited as liquidated damages. The latter was evicted for default in rent and thereafter brought suit to recover the sums paid to the lessor, with deduction for the rent due at the time of

eviction. Lessor contended that under the lease the sum was payment of an existing obligation rather than a deposit. The Appellate Court held that the lessee should have a refund of the balance remaining after deduction of the rent due at the time of the eviction. It would be strange indeed to hold that the addition of the liquidated damage clause which did not specifically refer to the $17,000.00 payment, as distinguished from any other "rent," should cause the sum to be refundable. In other words, if nothing had been said, it would not be refundable, but if the addition of the idea that "just so we understand each other, you will not in any case receive this back," should make it refundable, the rule would surely be difficult to understand. We take this case to be a following of the policy adopted by Illinois that, in the absence of compelling considerations to the contrary, a defaulting tenant can obtain a refund of an unearned advance payment.

Other Illinois decisions have followed the line of allowing a return of a deposit to a defaulting tenant. In Kay Gee Amusement Co. v. Cave, 177 Ill App 250 on 255, where $1200 was deposited "as security for the payment of rent hereunder," and it was provided that in the event of default it might be retained by lessor "as and for his liquidated damages and not as a penalty," the court, nevertheless, held it refundable. The court said at p 255:

> "It is also laid down as a rule of construction that in doubtful cases courts should be inclined to treat the stipulations as penalties and to hold that the real damages should be inquired into."

In this case there was no provision for payment of interest on the deposit and the lessor had made extensive improvements.

In Billos, et al. v. Kozlowski, 205 Ill App 285, a deposit to secure payment of rent was ordered refunded on dis-

possession of the tenant for his default. The same result was obtained in Weber v. Moy, 183 Ill App 200. Dunn v. Natenberg, 208 Ill App 300, follows the same line.

In Johnson v. Englestein, 236 Ill App 215, notwithstanding that the lease provided that:

> ". . . the lessee hereby covenants and agrees with the lessors, to pay unto them, the said lessors, as rent for said demised premises, the sum of Twenty-five Hundred Dollars ($2500.00) at the time of the signing and sealing of the instrument of lease and the sum of Two Hundred and Fifty Dollars ($250.00) on Monday, April 16, 1923, and the sum of Two Hundred and Fifty Dollars ($250.00) on each and every Monday thereafter during the term until and including Monday, the 17th day of February.",

the court held the deposit was a penalty and not rent. In this case, refund was provided in the event of destruction by fire, but not in the event of default. Interest was to be paid on the $2500 payment. The court said, p 220:

> "The defendants, however, contend that the provisions involved in the leases in the authorities cited are different from the provision in the lease in the case before us, in that the lease in question expressly provides that the $2,500 is paid 'as rent', while no such express provision was in any of the leases involved in the authorities cited. While this may be true, it does not follow that the $2,500 should not be refunded." (Emphasis ours.)

In the light of the opinions cited, certain aspects of the language of the lease in issue may be noted: (1) a single paragraph sets forth the description of the premises, the statement of the term and provision for rent at $150.00 per month, ". . . payable in advance upon the first day of each month"; (2) in distinct paragraphs,

434

the sum in issue is consistently described in the noun or verb form of "deposit," and we find no reference to the sum as "advance rent"; (3) paragraph 3 of the lease actually refers to "security for the payment of rent," with reference to provision that the lessor may terminate the lease upon a default, retaining the right to collect rent due and payable from the "property of the lessees"; and, (4) the amount of the "deposit" is consistently correlated to the cost of certain improvements to be made, although not described in the lease. While no minimum cost of the improvements is specified, except perhaps the $1000 paid on the date of the lease, for purposes of a "deposit," a maximum sum is provided, i. e., $3600. By the language of the lease, the final amount of the "deposit" is not necessarily equal to the amount of rent for the last two years of the term, for if the improvements made should cost but $1,800 such would be the amount of the "deposit" and it obviously could not meet the obligation of rent for two years at $150 per month. It seems, therefore, that the language of the lease is consistent when it provides the "deposit" should be a credit, i. e., a correlative of a debt, to the rent due. On the contrary, there is no language of the lease which categorically requires that the lessee was obligated to pay $3600 in total deposit, which sum was to be applied, i. e., appropriated to the payment of rent.

Defendants have argued that we must hold that the total of the sum deposited passed to the defendants for there was no provision, as noted in some of the cited cases, for a refund of the money to the lessees, and no provision for the payment of interest by the lessor. The Abstract shows, however, that plaintiff, John Auker, testified, without objection being made, that the "deposit" was to be used to make certain improvements. This testimony, taken with the language of the lease, reflects a purpose in providing for the "deposit" and

435

suggests that the making of the improvements by the lessor was a sufficient inducement for the lessee to forego provision for the payment of interest and that the credit of the sum upon rent was, in a sense, provision for a refund of the "deposit."

We think that, in case of doubt, it should be construed as a security deposit. There being no express contrary provision, we construe the deposit as a security for performance.

The lessee here was in no respect guilty of a non-performance. The lessee was deprived of the possession and enjoyment for which this sum was to be reserved. The Illinois authorities are so firm in allowing a refund for a defaulting tenant that we feel it would be inconsistent to be less favorable to a nondefaulting tenant.

But as earlier suggested, we are moved to allow a refund by other considerations. In Kane v. Dunn, 2 Ill App2d 50, 118 NE2d 66, the court found evidence of a mutual agreement to "cancel the lease" and to relet the premises.

The present lease provided that "either party" might cancel the lease in the event of sixty percent destruction by fire. A defendant testified that upon the event, the parties treated the lease as cancelled. The lessor elected not to rebuild. The lessee could not enjoy the last two years of the lease. A cancellation removes all rights and obligations accruing in the future. We are inclined to say that even if the payment had been "advance rent," a cancellation would have removed the consideration and entitled the lessee to a refund.

Defendant cites the case of Tarkovsky v. Hess, 64 Ill App 513, where one month's rent had been paid in advance on March 4, 1891, and a fire occurred on March 11, 1891. The tenant was denied a refund of the unused portion of the month's rent. We find the case in no

way controlling for the reasons that only one month's rent was involved, that there was no suggestion of a deposit for security and there definitely was no right to cancellation upon destruction of the premises.

None of the authorities give any credit to the lessor for repairs or improvements unless such items were lessee's obligations under the lease. It would be immaterial whether lessor furnished a new building or improved an old one unless, in some way, the contract provisions made this lessee's obligation.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for the Plaintiffs in the sum of $3,600.

Reversed and remanded with instructions.

SMITH and CRAVEN, JJ., concur.